Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 7247 | **DATE** | 12/17/2010 |
| **CASE TITLE** | Dedrick Jeffries vs. City of Chicago, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Court grants Defendant City of Chicago's motion to dismiss [35]. Plaintiff Jeffries' amended complaint is dismissed. Plaintiff is given 30 days in which to file a second amended complaint if he believes that he can cure any of the deficiencies in the federal claims asserted in his first amended complaint. The Court also notes that Plaintiff has not served Officer Peoria or any individual officers. If Plaintiff does not file a second amended complaint within 30 days, the Court will dismiss the claims against the unserved officer Defendants without prejudice (see Fed. R. Civ. P. 4(m)) and enter judgment for the City of Chicago and against Plaintiff.

■[ For further details see text below.]   Docketing to mail notices. Notices mailed by Judicial staff.

# STATEMENT

**I.   Background**

On November 18, 2009, Plaintiff Dedrick Jeffries submitted his original complaint, an application for leave to proceed in forma pauperis ("IFP"), and a motion for the appointment of counsel. The judge previously assigned to this case granted Plaintiff IFP status, but twice denied motions for the appointment of counsel. Defendant then filed a motion to dismiss, and the Court gave Plaintiff leave to file an amended complaint. Plaintiff filed his amended complaint, and Defendant filed a second motion to dismiss, to which Plaintiff failed to respond. Noting the absence of a response brief, the magistrate judge assigned to this matter requested that Plaintiff come before the Court for a status to inquire as to whether Plaintiff intended to proceed with his case. Prior to the status hearing, Plaintiff filed a third motion for the appointment of counsel. At the status hearing on September 7, 2010, the magistrate judge denied Plaintiff's third motion for the appointment of counsel but granted Plaintiff an additional seven weeks, until October 29, to file a response to Defendant's motion to dismiss. Despite the extension, Plaintiff has not filed a response.

In his amended complaint, Plaintiff alleges that on December 8, 2007, Chicago Police officers were called to 6643 South Ashland Avenue. See Plaintiff's Amended Complaint ("Compl.") at ¶ 4. According to Plaintiff, he was told by an Officer Peoria to give keys to a Miss DeVille despite an alleged ordinance that states that a landlord is not to have keys to a tenant's apartment. *Id.* Plaintiff alleges that he gave Miss DeVille the keys because of a "mean look" that Officer Peoria gave him and the "way he was shouting" at Plaintiff, which caused

Plaintiff to fear for his safety. *Id.* The amended complaint also alleges that Officer Peoria refused to give Plaintiff service or protection of the law. *Id.* at ¶ 5.

Plaintiff's amended complaint also describes a second incident, which allegedly occurred on December 24, 2007. On that date, Plaintiff claims to have experienced a break-in at 6643 South Ashland Avenue. *Id.* at ¶ 6. Plaintiff called 911 for "service", but alleges that he did not receive any "service." *Id.* at ¶ 7. Instead, Plaintiff alleges, without any additional information, that he was arrested. *Id.*

Plaintiff next alleges that on December 1, 2008, he was walking on 63rd Street near its intersection with Ashland Avenue. *Id.* at ¶ 8. According to Plaintiff, as he was walking westbound on 63rd Street, a blue and white Chicago Police car, Beat No. 753, came up behind him on his right side. *Id.* Plaintiff noticed that the officer operating that police car was "giving [him] a hard look." *Id.* at ¶ 9. According to Plaintiff, he stopped walking to allow the officer to drive by, but the officer made a sharp turn and came at him with the police car, almost hitting Plaintiff with the car. *Id.* Plaintiff claims he had to run for his life until the officer made another sharp turn and went back to his original position on 63rd Street. *Id.* at ¶ 10. According to Plaintiff, this same officer made another sharp turn returning to where Plaintiff was walking, exited the car, and "just stood there giving [Plaintiff] a hard look" as Plaintiff was walking on 63rd Street. *Id.* at ¶ 11.

In addition to these three specific incidents, Plaintiff also makes general complaints about the Chicago Police Department ("CPD"). For example, Plaintiff claims that he is being followed, watched, and harassed wherever he goes and that he has no privacy at home, on his phone, or with his ATM cards. *Id.* at ¶ 14. Plaintiff claims that both his car and phone are bugged. *Id.* According to Plaintiff, the alleged harassment by the CPD increased so much that he had no choice but to move out of the City of Chicago. *Id.* at ¶ 3. Plaintiff claims that the harassment has affected his health and that he is in need of a doctor's care, but that he does not have the money to obtain treatment. *Id.* at ¶ 15.

Based upon these facts, Plaintiff alleges false imprisonment and unlawful detention. Plaintiff also makes *respondeat superior* and indemnification claims against the City of Chicago.

## II.    Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

| STATEMENT |
|---|

## III. Analysis

In his amended complaint, Plaintiff refers to both "state law" and 42 U.S.C. § 1983 ("Section 1983") in discussing his claims for false imprisonment and unlawful detention. Section 1983, referenced by Plaintiff in his amended complaint, is not itself a source of liability. "[I]nstead, it creates a cause of action for the 'deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Narducci v. Moore*, 572 F.3d 313, 318-19 (7th Cir. 2009). In other words, § 1983 is a vehicle for vindicating rights furnished elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). In order to make a claim for a violation of one's civil rights, a plaintiff must allege (1) a deprivation of a federally guaranteed right, (2) perpetrated under color of state law. *Burrell v. City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004).

A police officer who unlawfully restrains an individual's movement commits an unlawful seizure within the meaning of the Fourth Amendment. See, *e.g.*, *Dunaway v. New York*, 442 U.S. 200, 207-08 (1979); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1180 (7th Cir. 1994) (stating that the two "crucial elements" of an unlawful seizure are coercive pressure from a state actor "resulting in a significant, present disruption of the targeted person's freedom of movement"). Unlawful detention and false imprisonment claims fall within the Fourth Amendment's protections. To this end, Plaintiff claims that on December 24, 2007, he called 911 to report a break-in, but did not receive "service." Instead, Plaintiff claims he was arrested by Officer Peoria.

The Supreme Court has noted that while the pleading standard set forth in Rule 8 does not require "detailed factual allegations" (*Twombly*, 550 U.S. at 555), it demands more than an accusation that "the-defendant-unlawfully-harmed-me" (*Iqbal*, 129 S. Ct. at 1955). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court in *Twombly* also noted that a complaint does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; see also *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).

In this instance, the only things that can be gleaned from the complaint about Plaintiff's false imprisonment and unlawful detention claims are that Plaintiff believes Officer Peoria unlawfully arrested him and failed to provide him with "service" on two occasions. However, without more factual detail, the Court cannot assess whether Plaintiff has set forth a cognizable constitutional claim. For instance, Plaintiff gives no factual details about the arrest, such as the alleged reason for it, the length of any detention, or whether he was taken into custody or detained for any amount of time. Certainly not all arrests give rise to constitutional violations. Without more factual allegations, the Court cannot determine whether Plaintiff's alleged arrest and detention state plausible constitutional violations or fall short.

Furthermore, the Constitution "does not entitle [citizens] to demand services, such as police protection." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000). Because there is no requirement that the City of Chicago provide police protection service, Plaintiff's claim for failure to provide service, as currently pled, fails.

Plaintiff also alleges that Officer Peoria violated his rights when Peoria ordered Plaintiff to give his keys to his landlord. It is unclear how this incident gives rise to any claims of constitutional violations, let alone the claims of false imprisonment and unlawful detention set forth in his Amended Complaint. While Plaintiff is not required to provide detailed factual allegations, he is required to provide more than an accusation that he suffered harm

**STATEMENT**

from an officer.

Plaintiff similarly fails to set forth any cause of action upon which relief may be granted in regard to the alleged incident on December 1, 2008 (when an officer followed and glared at him), as well as his general allegations of harassment. It is unclear how any of these allegations give rise to constitutional violations – once again, while detailed factual allegations are not required, a plaintiff must do more than make general allegations of harm suffered at the hands of an officer or general allegations of a fear for one's safety.

Plaintiff titles his third count as a state law "respondent superior" claim, which the Court construes as a claim for relief under a *respondeat superior* theory. However, there is no *respondeat superior* liability in § 1983 actions. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). That means that a defendant's status as supervisor of a constitutional tortfeasor is insufficient to impose liability. A supervisor must be personally involved in the conduct at issue. *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614-15 (7th Cir. 2002). In the present case, there are no allegations of any supervisors being personally involved with any of Plaintiff's troubles.

Furthermore, local government units like the City of Chicago cannot be held liable for § 1983 violations under a theory of *respondeat superior* "unless the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Board of Comm'rs of Bartholomew County, Indiana,* 183 F.3d 734, 737 (7th Cir. 1999). A claim regarding a local government unit's unconstitutional policy, practice or custom can be based upon: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or practice' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee,* 356 F.3d 740, 748 (7th Cir. 2004). To state an actionable § 1983 claim based on policy, practice, or custom, a plaintiff cannot merely assert the existence of a policy. See *Iqbal,* 129 S.Ct. at 1942 (holding that Iqbal failed to plead sufficient facts to plausibly show a discriminatory policy); see also *Horwitz v. Bd. of Educ. Of Avoca School Dist. No. 37,* 260 F.3d 602, 620 (7th Cir. 2001) (finding that allegations that plaintiff informed the school board of the numerous violations of plaintiff's rights and that the school board maintained a policy of ignoring such violations were insufficient to state a claim). Here, Plaintiff does not allege any specific policies, practices, and customs of the City. In fact, Plaintiff's complaint does not even mention a single "policy," "practice," or "custom" of the City of Chicago that contributed to any of his alleged harm. Therefore, Plaintiff's *respondeat superior* claim also fails.

**IV.     Conclusions**

For the reasons set forth above, Plaintiff has failed to state a cause of action in his amended complaint, and his claims are dismissed. To the extent that Plaintiff has asserted state law claims, the Court does not consider them at this time. Because Plaintiff has failed to state a valid federal claim, the Court declines to exercise supplemental jurisdiction to consider any state law claims at this time. See, *e.g.*, *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"). Plaintiff is given 30 days in which to file a second amended complaint if he believes that he can cure any of the deficiencies in the federal claims asserted in his first amended complaint. The Court also notes that Plaintiff has not served Officer Peoria or any individual officers. See Fed. R. Civ. Pro. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time"). If Plaintiff does not file a second amended complaint within 30 days, the Court will dismiss the claims against the unserved officer Defendants without prejudice (see Fed. R. Civ. P. 4(m)) and enter judgment for the City of Chicago and

| **STATEMENT** |
|---|
| against Plaintiff. <br><br>                                                  *[signature]* |